UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>               Plaintiff,<br><br>       v.<br><br>Assorted Jewelry, VL: $13,400.00,<br><br>               Defendant. | Civil Action No.:   5:23-CV-1109 (GTS/TWD) |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America (the "plaintiff") brings this verified complaint for forfeiture *in rem* against the above-captioned property (the "Defendant Jewelry") and alleges as follows:

**NATURE OF THE ACTION**

This is an action *in rem* brought pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. Forfeiture is sought of the Defendant Jewelry as the proceeds of offenses in violation of 21 U.S.C. § 841. 21 U.S.C. § 881(a)(6) provides for the forfeiture of the following:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title.

21 U.S.C.S. § 881(a)(6).

**THE PARTIES**

1.      The plaintiff is the United States of America.

2. The Defendant Jewelry consists of assorted pieces of jewelry, with a collective appraised value of $13,400.00. The individual pieces of jewelry are more precisely described below:

i) one 14 karat yellow gold cross pendant, 12.4 grams in weight, with an appraised value of $900;

ii) one 10 karat yellow gold necklace, 24.1 grams in weight, with an appraised value of $2,000;

iii) one 10 karat yellow gold curb and picture necklace, 29.8 grams in weight, with an appraised value of $2,300;

iv) one 10 karat yellow gold rope and cross necklace, 25.3 grams in weight, with an appraised value of $2,000;

v) one 10 karat yellow gold curb bracelet, 21.2 grams in weight, with an appraised value of $1,700;

vi) one 10 karat yellow gold rope and cross necklace, 23.2 grams in weight, with an appraised value of $2,000;

vii) one 10 karat yellow gold ring, 10 grams in weight, with an appraised value of $800; and

viii) one 10 karat yellow gold necklace with hand pendant, 21.2 grams in weight, with an appraised value of $1,700.

3. The Defendant Jewelry is presently in the custody of the United States of America.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355. Section 1345 provides district courts with "original

jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendant Jewelry and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b), which provides that a forfeiture action or proceeding "may be brought in…the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).

6. Venue is also properly situated in this district pursuant to Title 28, United States Code, Section 1395(b), which provides that "[a] civil proceeding for forfeiture of property may be prosecuted in any district where such property is found." 28 U.S.C. § 1395(b).

**FACTS**

7. On July 5, 2022, the United States Drug Enforcement Administration ("DEA"), in conjunction with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Metro-Jefferson Drug Task Force ("MJDTF"), and the Syracuse Police Department ("SPD") conducted a buy/bust operation targeting Jose Cintron ("Cintron"), leading to Cintron's arrest.

8. At the time of Cintron's arrest, law enforcement seized the Defendant Jewelry from Cintron's person and from the vehicle that he had driven to the buy/bust.

9. Prior to the controlled buy, agents met with a confidential source ("CS"), who was operating as a CS for the MJDTF for the purpose of scheduling a controlled purchase that day.

10. The CS identified Cintron by photo as their source of supply for Fentanyl and Heroin over the course of the prior year. The CS advised that their purchases of narcotics from

Cintron had, apart from one occasion, all occurred in the same parking area at Destiny Mall, located near Macy's store at 9509 Destiny USA Drive, Syracuse, New York, ("Macy's parking lot").

11. The CS advised law enforcement that Cintron drove a minivan to the drug buys on most occasions.

12. Law enforcement observed as the CS and Cintron arranged the details of the controlled purchase through a series of text messages from a number identified by the CS as belonging to Cintron ("Cintron's number").

13. The CS advised that Cintron had previously used this number to arrange drug buys.

14. At approximately 1:30 p.m., at the direction and in the presence of the agents, the CS sent a text message to Cintron's number requesting to purchase "272" and asking "what kinds u got?"

15. The CS told the agents that "272" would mean they wanted to purchase 272 "bricks" of Fentanyl/Heroin.

16. The CS received text response from Cintron's number stating: "NASCAR, RP10, 4th July, Volvo."

17. The CS responded by text with: "Can I get 70 of nascar 70 RP10 66 4th of July and 66 Volvo."

18. The CS then sent another text message stating: "So What's up can I head out." In response, the CS received a text from Cintron's number stating: "yeah."

19. At approximately 1:45 p.m., agents established physical surveillance of the Macy's parking lot. Agents parked the CS' vehicle, which the CS had previously driven to drug buys from

Cintron in the past, at the Macy's parking lot. CS remained at a separate location, with law enforcement, to continue communications with Cintron, as needed.

20. Agents also established physical surveillance at Cintron's last known residence at 117 Delong Avenue, Syracuse, New York ("117 Delong Avenue").

21. Agents observed a Gray Toyota Sienna registered to Citron's girlfriend, Janaysia Ivey, parked at 117 Delong Avenue.

22. Cintron was observed entering and exiting the door labeled as "1" at the front of the residence.

23. Agents observed Cintron enter the Gray Toyota Sienna, alone, and depart from 117 Delong Avenue.

24. At approximately 2:25 p.m., at the direction of agents and in the presence of agents, the CS sent a text message to Cintron's number informing Cintron they were getting close to the meeting location.

25. At approximately 2:33 p.m., agents observed the Gray Toyota Sienna arrive back at 117 Delong Avenue and saw Cintron exit the vehicle alone. Cintron was observed walking along the south side of the residence, towards the entrance for apartment 2. However, agents were unable to see the door for apartment 2 from where they were situated.

26. At approximately 2:38 p.m., agents observed Cintron walk into view from the south side of 117 Delong Avenue and enter the Gray Toyota Sienna, alone, and depart.

27. Through mobile surveillance, agents observed Cintron as he travelled in the direction of Destiny Mall.

28.     As Cintron approached Destiny Mall, the CS made a phone call to Cintron's number. The call was made at the direction of agents and in their presence. During the call, the CS informed Cintron that they had arrived at the meeting location.

29.     Agents observed Cintron drive through the Destiny Mall parking lots, approach the Macy's parking lot, and drive towards the CS's parked vehicle.

30.     As Cintron approached the CS's vehicle, agents activated the rear lights on the CS's vehicle with the key fob. Simultaneously, the CS texted Cintron's number and said that they had gone inside Destiny Mall to use the bathroom.

31.     Cintron parked the Gray Toyota Sienna in a space across from the CS's vehicle.

32.     Agents then observed the driver's side door of the Gray Toyota Sienna open and close but observed no one entering, exiting, or approaching the vehicle at that time.

33.     At approximately 2:44 p.m., the SPD Special Weapons and Tactics ("SWAT") team initiated a vehicle takedown on the Gray Toyota Sienna. The SPD SWAT vehicles encircled the Gray Toyota Sienna. SPD SWAT officers began exiting their vehicles, wearing visible law enforcement markings, and giving verbal commands to Cintron. Cintron, in an apparent attempt to flee from law enforcement, put the Gray Toyota Sienna into reverse, accelerated, and rammed into the driver's side of an SPD law enforcement vehicle behind the Gray Toyota Sienna.

34.     Cintron was removed from the vehicle without further incident and found to be the only passenger inside of the Gray Toyota Sienna.

35.     Inside of the Gray Toyota Sienna, agents located a blue reusable shopping bag that held a large quantity of "bricks." Some of the "bricks" had fallen out of the bag in the vehicle.

36.     These "bricks" were later counted, totaling 272. The bricks tested positive for the presence of Fentanyl, and were stamped with "July 4th," "RP10," "Nascar," and "Volvo."

37.     Some of the Defendant Jewelry was seized from Cintron's person at the time of the takedown, and the remainder was located inside of the Gray Toyota Sienna.

## CONCLUSION

38.     The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, the plaintiff, the United States of America, respectfully requests that the Court:

(1)     Issue a Warrant of Arrest *in Rem*, in the form submitted with this Complaint;

(2)     Direct any person having any claim to the Defendant Jewelry to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3)     Enter judgment declaring the Defendant Jewelry to be forfeited and condemned to the use and benefit of the United States; and

(4)     Award such other and further relief to the United States as it deems proper and just.

Dated: August 31, 2023

CARLA B. FREEDMAN
United States Attorney

By:     */s/ Elizabeth A. Conger*
Elizabeth A. Conger
Assistant United States Attorney
Bar Roll No. 520872

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF ONONDAGA     )

Brandon T. Geer, being duly sworn, deposes and states:

I am a Task Force Officer with the United States Drug Enforcement Administration (DEA). I have read the foregoing Complaint for Forfeiture *in Rem* and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this 31st day of August 2023.

_____
Brandon T. Geer, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this __31st__ day of August 2023

_____
Notary Public

MICHELLE J. TROUBETARIS
Notary Public - State of New York
Qualified in Onondaga County
No. 01TR6152879
My Commission Expires September 25, 20__24__